# 𝔌n the United States Court of Federal Claims
No. 14-140C
Bid Protest
(Filed Under Seal: March 7, 2014)[1]
(Reissued: March 12, 2014)

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
BANNUM, INC.,                       *
                                    *
        Plaintiff,                  *
                                    *
    v.                              *  Post-Award Bid Protest; Standing;
                                    *  Nonresponsive Proposal; Non-
THE UNITED STATES,                  *  Compliant Proposal; Firm-Fixed-Price
                                    *  Contract; Interested Party
        Defendant,                  *  Requirement; Direct Economic
                                    *  Interest; Substantial Chance of Award;
    and                             *  Jurisdiction.
                                    *
DISMAS CHARITIES, INC.,             *
                                    *
        Intervenor.                 *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

Joseph A. Camardo, Jr., Camardo Law Firm, PC, 127 Genesee Street, Auburn, NY 13021, for Plaintiff.

Stuart Delery, Bryant G. Snee, Donald E. Kinner, and Russell J. Upton, United States Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Post Office, Washington, D.C. 20044, for Defendant. Devin Wolak, United States Department of Justice, Civil Division, Commercial Litigation Branch, Of Counsel. Seth Bogin and William Robinson, United States Department of Justice, Federal Bureau of Prisons, Commercial Law Branch, Of Counsel.

Alex D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, VA 22102-4859, for Intervenor. Daniel S. Herzfeld, Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, VA 22102-4859, Of Counsel.

---

[1] The Court issued this opinion under seal on March 7, 2014, and directed the parties to file proposed redactions by March 12, 2014. The parties timely filed joint proposed redactions. Redactions are indicated by brackets "[  ]."

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

**WILLIAMS**, Judge.

This bid protest comes before the Court on Defendant's and Intervenor's motions to dismiss pursuant to Rule 12(b)(1). Plaintiff, Bannum, Inc. ("Bannum"), challenges the terms of a solicitation issued by the United States Department of Justice, Federal Bureau of Prisons ("BOP") and BOP's award of a contract to Intervenor Dismas Charities, Inc. ("Dismas"). Bannum argues that the solicitation was defective because BOP required compliance with the Prison Rape Elimination Act of 2003 ("PREA") without giving guidance regarding the implementation and pricing of this requirement. Bannum further contends that BOP improperly relaxed a mandatory solicitation requirement that performance commence within 120 days of award and that Dismas materially misrepresented its ability to commence performance within that time frame.

The Government and Intervenor contend that Plaintiff lacks standing to protest because it did not have a substantial chance of award and therefore is not an interested party. Specifically, they contend that because Bannum qualified its price and failed to include any pricing for complying with PREA, even though the solicitation made such compliance mandatory, Bannum's offer was nonresponsive and ineligible for award. Because standing is a threshold issue of subject-matter jurisdiction, the Court addresses this argument at the outset. For the reasons that follow, the Court finds that Bannum is not an interested party and grants the motions to dismiss.

**Background[2]**

As a prefatory matter, the Court previously issued a decision denying Bannum's motion for a temporary restraining order ("TRO")/preliminary injunction. The incumbent's contract was set to expire on February 28, 2014, and in order to determine whether the awardee, Dismas, should commence performance as scheduled on March 1, 2014, the Court expedited consideration of this matter. Accordingly, the Court orally denied Plaintiff's motion on February 26, 2014, issued its written opinion on February 28, 2014, and notified the parties that it would address the motions to dismiss in a separate opinion. Tr., Feb. 26, 2014.

**The Solicitation**

On February 22, 2012, BOP issued solicitation number RFP-200-1168-SE ("Solicitation" or "RFP") requesting proposals for Residential Re-entry Center ("RRC") services for male and

---

[2] The Court derives the background from the parties' exhibits to the pleadings and moving papers, and from the record created at the February 24, 2014 hearing. The Court uses "PX" and "DX" to designate Plaintiff's and Defendant's exhibits, respectively. The Administrative Record has not been filed.

female Federal offenders located in the Tupelo, Mississippi area. PX 1 at 000001-03, 000047. The awardee would provide housing and "furnish all personnel, management, equipment, supplies, and services necessary for performance of all aspects of the contract," including operation of the RRC in a manner consistent with BOP's mission to "protect society by confining offenders in . . . community-based facilities that are safe, humane, cost efficient, appropriately secure, and provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens." Id. at 000047. Plaintiff Bannum is the incumbent.

The Solicitation called for "an indefinite delivery, requirements type contract, with firm-fixed unit prices" to house an estimated 40 full-time offenders annually for a two-year base period, with three option years. Id. at 000006. The Statement of Work reiterated that "[u]nless explicitly stated otherwise, the contractor is responsible for all costs associated with and incurred as part of providing the services outlined in this contract." Id. at 000047. Section B of the Solicitation requested unit pricing for these services on a daily basis per inmate for two base years and three option years. Id. at 000006. The quantity of inmate days for the base years was 29,200 and, for each option year, 14,640. Id. BOP was to evaluate proposals with regard to Past Performance, Technical/Management, and Price, weighing Technical/Management and Past Performance when combined significantly greater than Price. Id. at 000036 § M.5. As between Past Performance and Technical/Management, BOP was to accord Past Performance greater importance. In circumstances where the evaluation of competing proposals in the Technical/Management and Past Performance areas became more equal in rating, Price became more important in "selecting the best value for the Government." Id.

On February 28, 2013, BOP issued Amendment 005 to the Solicitation, stating in pertinent part:

1. In Section C, Statement of Work, Chapter 2 — Personnel, Page 20, Section 6. Sexual Abuse Information, after the second paragraph, the following paragraph is added:

"P.L. 108-79, Prison Rape Elimination Act of 2003 (PREA)[,] seeks to eliminate sexual assaults and sexual misconduct of offenders in correctional facilities to include all community based facilities. Administration must maintain a zero-tolerance for sexual abuse, specific policy that addresses PREA compliance will be maintained by contractor. Facility must be in full compliance with PREA standards that apply to Community Confinement Facilities. Compliance with standards will be measured by use of assessment tools such as Published by the National Prison Rape Elimination Commission, "Standards for the Prevention, detection, response, and monitoring of sexual abuse in Community [Corrections",] [www.ncjrs.gov/pdffiles1/226683.pdf,] subsequent revisions, or any other monitoring tool as adopted by the BOP. PREA coordinator must be designated in writing and submitted to the BOP. In accordance with provisions of PREA, contractor must be audited by a certified PREA compliance auditor at no cost to the BOP. Copies of all audit material will be provided to the BOP."

PX 2 at 000150-51 ¶ 14. Amendment 005 did not revise the evaluation criteria.

3

**Proposals**

On April 23, 2012, Bannum and Dismas each submitted Technical/Management, Business, and Past Performance proposals.  PX 3, 4.  On August 23, 2012, BOP issued its first request for a Final Proposal Revision, asking that each offeror review its price proposal and submit a final proposal revision.  See PX 15 at 1.  BOP's request also stated "that the Government intends to make award without further revisions."  Id. at 2.  Bannum and Dismas each submitted a response.  See PX 31 at 31.  On February 14, 2013, BOP issued a request for Final Proposal Revision # 2.  Pl.'s Mem. Supp. Mot. Prelim. Inj. ("Pl.'s Mot.") 3, Feb. 19, 2014.  Bannum and Dismas each submitted a response.  PX 20 at 1, 2; see PX 31 at 31.

On February 28, 2013, BOP issued a request for Final Proposal Revision # 3, asking that offerors sign and return Amendment 005 to the Solicitation, which required compliance with PREA.  PX 22, 23.  The BOP again stated that "the Government intends to make award without further revisions."  PX 22 at 1-2.  Dismas responded on March 6, 2013, stating: **[**

**]** PX 24 (emphasis in original).  Bannum responded on March 7, 2013, by submitting a letter to the contracting officer labeled "Final Proposal Revision #3 and AGENCY PROTEST."  PX 25.  Bannum did not revise its price and, in fact, included a footnote commenting on pricing compliance with PREA:

> However, these prices do not, and cannot, reflect any consideration for the effects of Amendment 5 that BOP presented with this FPR #3.  As is discussed elsewhere in this response to the FPR, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA and its requirements at this point in time and with the limited amount of information we have been given, not to mention the lack of any technical guidance on this new requirement.  Accordingly, an enormous amount of information is required prior to pricing this new contract requirement which itself may require untold amounts of extra work time, services, efforts, and perhaps the necessity for consultants, auditors, not to mention additional executive and management level staffing and effort.  Bannum hereby requests that discussions continue on this requirement and that we be provided an[] adequate opportunity to respond to the new requirement and to amend our proposal as needed.

PX 25 at 000001 n.1 (emphasis omitted).  After requesting additional information regarding PREA compliance, Bannum stated:

> Certainly, there must be a great deal of discussion on this issue prior to execution and full implementation of Amendment 5.
>
> * * *
>
> In the event BOP should decide not to provide additional information, discussions, and technical guidance, and BOP requires that Bannum execute the modification with the PREA contained therein without the ability to fully

4

understand the ramifications of the PREA on the RRC solicitation, contract and SOW, then Bannum hereby protests the inclusion of the PREA as well as the BOP decision to require the same without any information, discussion, or technical guidance. Stated differently, we hereby protest the inclusion of the PREA portion of Amendment 5 into the solicitation subject to the discussion herein and lack of information, specifications and technical guidance from BOP.

Id. at 000005-06. Bannum executed and returned Amendment 005 with its response, but the executed Amendment included a handwritten note stating: "Subject to and limited by Bannum's response to FPR # 3 dated 3/7/2013 and submitted herewith; also, subject to Bannum's reservation of all rights and protest." Id. at 000008.

On July 3, 2013, BOP issued request for Final Proposal Revision # 4 without responding to Bannum's March 7, 2013 "AGENCY PROTEST." PX 27. BOP requested that each offeror review its price proposal and submit a final proposal revision. Id. BOP's request again stated "that the Government intends to make award without further revisions." Id. On July 9, 2013, Dismas responded to Final Proposal Revision # 4, executing and returning Amendment 006 to the Solicitation, submitting a revised subcontracting plan and revising its unit pricing. PX 28 at 000001-02.

On July 10, 2013, Bannum submitted a response to BOP's request for Final Proposal Revision # 4 stating that it did not revise its unit prices. PX 29 at 000001-02. Unlike its Final Proposal Revision # 3, Bannum did not denominate this response as an "AGENCY PROTEST." Bannum did, however, repeat verbatim its footnote requesting discussions and communicating that its prices did not reflect pricing for PREA compliance. Id. at 000001 n.1; see PX 25 at 000001 n.1.

**The Award**

BOP did not conduct any further discussions or issue any additional requests for Final Proposal Revisions. On July 19, 2013, the contracting officer issued a Source Selection Decision ("SSD") rating the proposals as follows:

|  | Dismas | Bannum |
| --- | --- | --- |
| Past Performance | Blue/Very Good | Blue/Very Good |
| Technical/Management | Blue/Very Good | Green/Acceptable |
| Price | $5,212,222.40 | $5,339,200.00 |

PX 31 at 1, 8, 15, 23, 31, 35. The contracting officer found in the SSD that both Dismas' and Bannum's prices were fair and reasonable. Id. at 31. On August 26, 2013, BOP awarded Dismas the contract ("Contract"). PX 34.

**Bannum's GAO Protest and BOP's Stop Work Order**

On September 4, 2013, Bannum filed a protest with the Government Accountability Office ("GAO"), claiming: "(1) the BOP improperly relaxed the Solicitation requirements for

5

Dismas and not for other offerors in the competitive range, (2) Dismas' offered price was unreasonably low, and (3) the BOP's assessment of Bannum's Technical/Management rating was unreasonable and was in violation of the stated Evaluation Criteria." Def.'s Mot. Dismiss App. A258, Feb. 23, 2014. Bannum's GAO protest did not challenge Amendment 005's incorporation of PREA. Bannum's GAO protest triggered an automatic stay pursuant to the Competition in Contracting Act, 31 U.S.C. § 3553(d)(3) (2012). On September 6, 2013, BOP issued Dismas a stop work order. DX 30 at 1-2. To continue RRC services in Tupelo through December 31, 2013, and then to January 31, 2014, BOP exercised two options on Bannum's July 31, 2013 contract. Pl.'s Mot. Ex. 3, 4. On December 11, 2013, GAO denied in part and dismissed in part Bannum's protest. Def.'s Mot. Dismiss App. A267-72. On December 12, 2013, the contracting officer issued Dismas Contract Modification 0002 to cancel the stop work order. DX 31. To maintain RRC service in Tupelo through February 28, 2014, BOP again exercised its option to extend Bannum's July 31, 2013 contract through February 28, 2014. Pl.'s Mot. Ex. 5.

## Discussion

The Tucker Act confers jurisdiction on this Court "to render judgment on an action by an interested party objecting to a solicitation . . . or the award . . . ." 28 U.S.C. § 1491(b)(1) (2012). Hence, only an "interested party" has standing to object to a solicitation or award in this Court. "Standing is a question of subject matter jurisdiction . . . ." Archura LLC v. United States, 112 Fed. Cl. 487, 497 (2013) (citing S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 n.3 (Fed. Cir. 2005)) (equating the Tucker Act's "interested party" requirement with "Article III's 'concrete and particularized injury' requirement."); see also Night Vision Corp. v. United States, 68 Fed. Cl. 368, 392 (2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)), aff'd, 469 F.3d 1369 (Fed. Cir. 2006). Jurisdiction is a threshold issue that the Court must address before examining the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (citation omitted); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

The party invoking jurisdiction "bears the burden of establishing [the] elements [of standing]." Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (alterations in original) (quoting Lujan, 504 U.S. at 561). Though the Tucker Act does not define "interested party," the Federal Circuit has explained that the "interested party" inquiry has two prongs: (1) whether one is "an actual or prospective bidder" (2) "whose direct economic interest would be affected by the award of the contract." Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).

"To prove a direct economic interest, a party must show that it had a 'substantial chance' of winning the contract." Id. (citing Rex Serv. Corp., 448 F.3d at 1308); see also Info. Tech. & Applications Corp., 316 F.3d at 1319 (citing Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113 (2002)). In a bid protest the Court performs this "substantial chance of award" -- or prejudice -- inquiry twice: first, in the context of ascertaining its jurisdiction and second, in evaluating the merits of the protest. Archura LLC, 112 Fed. Cl. at 497; Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 696

6

(2010) (recognizing that "Federal Circuit precedent has used the doctrine of prejudice in two distinct ways, the first relating to the pre-decisional standing inquiry of 'allegational prejudice' [and] the second corresponding to '[Administrative Procedure Act] prejudice.'").

The Government acknowledges that Bannum "satisfies the first prong" of the standing inquiry because Bannum was an actual bidder, but contends that Bannum fails the second prong because "procuring agencies should make awards only to offerors that submit responsive offers" and Bannum's proposal was nonresponsive.[3] Def.'s Mot. at 26-27 (citing ManTech Tel. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 71, (2001), aff'd, 30 Fed. App'x 995 (Fed. Cir. 2002). The Government and Dismas contend that Bannum's proposal was nonresponsive or non-compliant because the RFP required firm-fixed unit prices but Bannum qualified its proposal by expressly representing that its prices did not reflect pricing associated with Amendment 005, *i.e.* PREA compliance. Def.'s Mot. Dismiss at 26-27 (citing generally FAR 16.202-1 as defining firm-fixed-price contracts as not subject to adjustment); Dismas' Mot. Dismiss at 5-6. Dismas emphasizes that "[a]n offeror that submits a non-compliant offer has no standing to protest an award, because it has no chance of receiving the award." Id. (citing A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 138 (2006); Philips Healthcare Informatics, B-400733.8 et al., 2009 CPD ¶ 246, 2009 WL 4547021, at *2 (Comp. Gen. Dec. 2, 2009); Optical Sys. Tech., Inc., B-292743.2, 2004 CPD ¶ 231, 2004 WL 2584878, at *4 (Comp. Gen. Nov. 12, 2004)).

The Government and Dismas are correct. In response to Amendment 005, which added the requirement for PREA compliance, Bannum submitted a letter labeled "Final Proposal Revision #3 and AGENCY PROTEST" which included a footnote stating:

---

[3] The Court recognizes that "nonresponsive" is a term of art typically used in the context of sealed bidding. The term, however, has permeated the universe of negotiated procurements where it refers to proposals that fail to comply with material requirements of the solicitation. See, e.g., Excel Mfg., Ltd. v. United States, 111 Fed. Cl. 800, 806 n.3 (2013) ("The court notes that while 'responsiveness' and 'non-responsiveness' are terms used by the FAR with respect to sealed bids . . . the elimination of proposals which fail to conform to material requirements of a solicitation is likewise sanctioned by the FAR in negotiated procurements."); A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 138 (2006) (holding, in a negotiated procurement, that the protestor's bid was nonresponsive for failure to include a bid bond as required by the solicitation.). In its motion, Dismas refers to Bannum's proposal as "non-compliant" which this Court uses interchangeably with "nonresponsive." The same rationale for excluding "nonresponsive bids" in sealed procurements underlies the exclusion of "non-compliant" proposals in negotiated procurements. See John Cibinic, Jr., Ralph C. Nash, Jr. & Christopher R. Yukins, Formation of Government Contracts 527 (4th ed. 2011) ("This *responsiveness* requirement is derived from the statutory provisions providing that award be made to the bidder 'whose bid conforms to the solicitation.'") (emphasis in original) (quoting 10 U.S.C. § 2305(b)(3); 41 U.S.C. § 3702(b)); cf. E.W. Bliss Co. v. United States, 77 F.3d 445, 448 (Fed. Cir. 1996) ("In negotiated procurements, a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations." (citation omitted)).

> However, these prices do not, and cannot, reflect any consideration for the effects of Amendment 5 that BOP presented with this FPR #3. As is discussed elsewhere in this response to the FPR, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA and its requirements at this point in time and with the limited amount of information we have been given, not to mention the lack of any technical guidance on this new requirement. Accordingly, an enormous amount of information is required prior to pricing this new contract requirement which itself may require untold amounts of extra work time, services, efforts, and perhaps the necessity for consultants, auditors, not to mention additional executive and management level staffing and effort. Bannum hereby requests that discussions continue on this requirement and that we be provided an[] adequate opportunity to respond to the new requirement and to amend our proposal as needed.

PX 25 at 000001 n.1. After requesting additional information regarding how BOP would assess PREA compliance, Bannum protested "the inclusion of the PREA portion of Amendment 5 into the solicitation subject to the discussion herein and lack of information, specifications and technical guidance from BOP." Id. at 000006 (emphasis omitted). In executing Amendment 005, Bannum included a handwritten note stating: "Subject to and limited by Bannum's response to FPR #3 dated 3/7/2013 and submitted herewith; also, subject to Bannum's reservation of all rights and protest." Id. at 000008. In its final proposal revision Bannum reiterated its footnote that stated its pricing did not include the new PREA requirements. PX 29 at 000001 n.1.

Bannum's proposal with its footnoted pricing caveat does not constitute an offer that the Government could accept. There was no meeting of the minds. Bannum made clear it would need to formulate a price proposal for the addition of PREA and that its offer did not include such pricing. The Solicitation, however, required unit pricing representing the daily cost to maintain an inmate at the RRC. The Government made compliance with PREA mandatory and sought firm-fixed pricing for the entirety of the Solicitation's requirements -- not pricing for everything except PREA compliance. Because Bannum omitted pricing for PREA compliance, its offer was nonresponsive -- or non-compliant -- and could not form the basis of an award.

Bannum contends that its bid was not qualified, as it submitted a specific price that would have bound Bannum had BOP selected its bid. Pl.'s Resp. Add'l Auth. 1, Feb. 25, 2014. In the Court's view, given Bannum's responses to Final Proposal Revision # 3 and 4, Bannum had represented that its pricing did not encompass PREA compliance and injected uncertainty as to whether it would comply with PREA. In arguing its pricing was not qualified, Bannum relies upon the statement in the SSD that Bannum's price was fair and reasonable. PX 31 at 31. The fact that the Source Selection Authority did not deem Bannum's offer nonresponsive does not, however, preclude this Court from assessing the responsiveness of Bannum's offer in the context of examining Bannum's standing.

To the extent that Bannum suggests that this Court cannot deviate from the arbitrary and capricious standard of review in determining standing, Bannum misunderstands the parameters of this Court's ability to determine its jurisdiction. It is true that under § 1491(b)(4) this Court must review the agency's procurement decision pursuant to the standards set forth in the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706. In assessing Bannum's standing, however, this Court is not reviewing the decision of an agency, but is making a threshold determination as to whether it can hear this case. See Steel Co., 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (citation omitted)); Labatt Food Serv. Inc., v. United States, 577 F.3d 1375, 1378-79 (Fed. Cir. 2009) (citing Myers, 275 F.3d at 1369-70 ("[S]tanding is a threshold jurisdictional issue.")). A plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). A plaintiff must present "competent proof" and demonstrate affirmatively that the Court has jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).

Jurisdiction here is predicated on a determination of whether Bannum had a substantial chance of award -- not on a review of an agency decision. In contrast to the Court's limited scope of review under the APA, "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged." Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999). Thus, contrary to Bannum's suggestion, in assessing standing, this Court is not bound by the finding in the Source Selection Decision or required to apply the APA standard of review.

In an uncannily similar case, Dismas Charities, Inc. v. United States, 75 Fed. Cl. 59 (2007), the Court of Federal Claims dismissed Dismas' post-award bid protest for lack of standing where Dismas submitted a 240-day "revised" start-up plan to BOP when the solicitation required a 120-day start-up period. The court in Dismas Charities noted that, even though the Source Selection Decision called Dismas' proposal technically acceptable, Dismas could not "excuse its failure to properly submit a [requirement] by the agency's lack of diligence in removing a nonresponsive bid from consideration." Id. at 62 (alteration in original) (quoting A & D Fire Prot., 72 Fed. Cl. at 140). Ultimately the court found that Dismas submitted a final proposal revision that did not conform to the solicitation requirements. As a result, the court ruled that Dismas did not have a substantial chance of contract award and could not be an "interested party" for purposes of this court's bid protest jurisdiction. Id. The court in Dismas Charities, therefore, dismissed the case for lack of standing without deference to BOP's finding in the SSD that Dismas had submitted a technically acceptable proposal. Id. at 61-62. Here, as in Dismas Charities, the Court must ascertain its own jurisdiction and, in doing so, is not bound by an agency's mistake in overlooking a non-compliant proposal.

## Conclusion

Bannum has shown, and the Government has admitted, that Bannum was an actual bidder, thereby satisfying the first prong of the interested party requirement. Bannum has not demonstrated that it had a substantial chance of winning the contract -- a direct economic interest -- thereby failing the second prong of the interested party requirement. If Bannum were to win on the merits, BOP could not award Bannum the contract because Bannum did not submit a proposal for "an indefinite delivery, requirements type contract, with firm-fixed unit prices" that complied with all mandatory requirements. Therefore, Bannum lacks standing, and this Court does not have subject-matter jurisdiction.

The Court **GRANTS** the Defendant's and Intervenor's motions to dismiss.  The Court directs the Clerk of Court to dismiss this action without prejudice for lack of standing.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**
